CJF7.22.19



**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

---

*Sandra Wilkinson*
*Assistant United States Attorney*
*Sandra.Wilkinson@usdoj.gov*

*Suite 400*
*36 S. Charles Street*
*Baltimore, MD 21201-3119*

*DIRECT: 410-209-4921*
*MAIN: 410-209-4800*
*FAX: 410-962-0716*

July 23, 2019

Manuel J Retureta Esq.
RETURETA & WASSEM, P.L.L.C.
300 New Jersey Ave., NW, Suite 900
Washington, D.C. 20001

Re: <u>United States v. Ivanovich Constanzo Mercedes-Soriano,</u> Criminal No. RDB 18-535

Dear Counsel:

This letter, together with the Sealed Supplement, confirms the plea agreement (this "Agreement") that has been offered to your client, Mercedes-Soriano (hereinafter "Defendant"), by the United States Attorney's Office for the District of Maryland ("this Office"). If the Defendant accepts this offer, please have the Defendant execute it in the spaces provided below. If this offer has not been accepted by July 25, 2019, it will be deemed withdrawn. The terms of the Agreement are as follows:

### Offenses of Conviction

1. The Defendant agrees to plead guilty to Count One and Seven of the Superseding Indictment, which charges the Defendant with Conspiracy to Distribute and Possess with Intent to Distribute Controlled Dangerous Substances, in violation of 21 U.S.C. § 846 (Count One) and False Claim to U.S. Citizenship, in violation of 18 U.S.C. § 911. The Defendant admits that the Defendant is, in fact, guilty of these offenses and will so advise the Court.

2. This plea agreement is expressly contingent on acceptance by the Court of a plea agreement offered this day to Defendant Herme Soriano. Absent acceptance of the pleas by the Courts as to both Mercedes-Soriano and Soriano, the terms of this agreement are null and void.

### Elements of the Offense

3. The elements of the offense to which the Defendant has agreed to plead guilty, and which this Office would prove if the case went to trial, are as follows:

Count One: Narcotics Conspiracy,

   a. From in or about March 2017 through in or about September 26, 2018, in the District of Maryland, an agreement existed between two or more persons to distribute and possess with the intent to distribute a mixture or substance containing a detectable amount of

1

cocaine, a Schedule II controlled substance and one kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule I controlled substance.

    b.  The Defendant knowingly entered into the charged agreement.

  Count Seven: False Claim to Citizenship

    a.  On or about the dates charged in the Superseding Indictment, the Defendant was an alien.

    b.  The Defendant falsely and willfully represented himself to be a citizen of the United States when, in fact, he was not.

<u>Penalties</u>

  4.  The maximum penalties provided by statute for the offenses to which the Defendant is pleading guilty are as follows:

| Count | Statute | Minimum Prison | Maximum Prison | Supervised Release | Maximum Fine | Special Assessment |
|---|---|---|---|---|---|---|
| One | 21 U.S.C. § 846 | 10 years | Life | At least 5 years; maximum life | $10,000,000 | $100 |
| Seven | 18 U.S.C. § 911 | N/A | 3 years | 1 year | $250,000.00 | $100.00 |

    a.  Prison: If the Court orders a term of imprisonment, the Bureau of Prisons has sole discretion to designate the institution at which it will be served.

    b.  Supervised Release: If the Court orders a term of supervised release, and the Defendant violates the conditions of supervised release, the Court may order the Defendant returned to custody to serve a term of imprisonment as permitted by statute, followed by an additional term of supervised release.

    c.  Restitution: The Court may order the Defendant to pay restitution pursuant to 18 U.S.C. §§ 3663, 3663A, and 3664.

    d.  Payment: If a fine or restitution is imposed, it shall be payable immediately, unless the Court orders otherwise under 18 U.S.C. § 3572(d). The Defendant may be required to pay interest if the fine is not paid when due.

    e.  Forfeiture: The Court may enter an order of forfeiture of assets directly traceable to the offense, substitute assets, and/or a money judgment equal to the value of the property subject to forfeiture.

  f. Collection of Debts: If the Court imposes a fine or restitution, this Office's Financial Litigation Unit will be responsible for collecting the debt. If the Court establishes a schedule of payments, the Defendant agrees that: (1) the full amount of the fine or restitution is nonetheless due and owing immediately; (2) the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment; and (3) the United States may fully employ all powers to collect on the total amount of the debt as provided by law. Until the debt is paid, the Defendant agrees to disclose all assets in which the Defendant has any interest or over which the Defendant exercises direct or indirect control. Until the money judgment is satisfied, the Defendant authorizes this Office to obtain a credit report in order to evaluate the Defendant's ability to pay, and to request and review the Defendant's federal and state income tax returns. The Defendant agrees to complete and sign a copy of IRS Form 8821 (relating to the voluntary disclosure of federal tax return information) and a financial statement in a form provided by this Office.

### Waiver of Rights

  5. The Defendant understands that by entering into this Agreement, the Defendant surrenders certain rights as outlined below:

  a. If the Defendant had pled not guilty and persisted in that plea, the Defendant would have had the right to a speedy jury trial with the close assistance of competent counsel. That trial could be conducted by a judge, without a jury, if the Defendant, this Office, and the Court all agreed.

  b. If the Defendant elected a jury trial, the jury would be composed of twelve individuals selected from the community. Counsel and the Defendant would have the opportunity to challenge prospective jurors who demonstrated bias or who were otherwise unqualified, and would have the opportunity to strike a certain number of jurors peremptorily. All twelve jurors would have to agree unanimously before the Defendant could be found guilty of any count. The jury would be instructed that the Defendant was presumed to be innocent, and that presumption could be overcome only by proof beyond a reasonable doubt.

  c. If the Defendant went to trial, the Government would have the burden of proving the Defendant guilty beyond a reasonable doubt. The Defendant would have the right to confront and cross-examine the Government's witnesses. The Defendant would not have to present any defense witnesses or evidence whatsoever. If the Defendant wanted to call witnesses in defense, however, the Defendant would have the subpoena power of the Court to compel the witnesses to attend.

  d. The Defendant would have the right to testify in the Defendant's own defense if the Defendant so chose, and the Defendant would have the right to refuse to testify. If the Defendant chose not to testify, the Court could instruct the jury that they could not draw any adverse inference from the Defendant's decision not to testify.

  e. If the Defendant were found guilty after a trial, the Defendant would have the right to appeal the verdict and the Court's pretrial and trial decisions on the admissibility of evidence to see if any errors were committed which would require a new trial or dismissal of the

charges. By pleading guilty, the Defendant knowingly gives up the right to appeal the verdict and the Court's decisions.

  f. By pleading guilty, the Defendant will be giving up all of these rights, except the right, under the limited circumstances set forth in the "Waiver of Appeal" paragraph below, to appeal the sentence. By pleading guilty, the Defendant understands that the Defendant may have to answer the Court's questions both about the rights being given up and about the facts of the case. Any statements that the Defendant makes during such a hearing would not be admissible against the Defendant during a trial except in a criminal proceeding for perjury or false statement.

  g. If the Court accepts the Defendant's plea of guilty, the Defendant will be giving up the right to file and have the Court rule on pretrial motions, and there will be no further trial or proceeding of any kind in the above-referenced criminal case, and the Court will find the Defendant guilty.

  h. By pleading guilty, the Defendant will also be giving up certain valuable civil rights and may be subject to deportation or other loss of immigration status, including possible denaturalization. The Defendant is not a citizen of the United States and pleading guilty will have consequences with respect to the Defendant's immigration status. Under federal law, conviction for a broad range of crimes can lead to adverse immigration consequences, including automatic removal from the United States. Removal and other immigration consequences are the subject of a separate proceeding, however, and the Defendant understands that no one, including the Defendant's attorney or the Court, can predict with certainty the effect of a conviction on immigration status. The Defendant is not relying on any promise or belief about the immigration consequences of pleading guilty. The Defendant nevertheless affirms that the Defendant wants to plead guilty regardless of any potential immigration consequences.

### Advisory Sentencing Guidelines Apply

6. The Defendant understands that the Court will determine a sentencing guidelines range for this case (henceforth the "advisory guidelines range") pursuant to the Sentencing Reform Act of 1984 at 18 U.S.C. § 3551-3742 (excepting 18 U.S.C. § 3553(b)(1) and 3742(e)) and 28 U.S.C. §§ 991 through 998. The Defendant further understands that the Court will impose a sentence pursuant to the Sentencing Reform Act, as excised, and must take into account the advisory guidelines range in establishing a reasonable sentence.

### Factual and Advisory Guidelines Stipulation

7. This Office and the Defendant stipulate and agree to the Statement of Facts set forth in Attachment A, which is incorporated by reference herein and to the following applicable Sentencing Guidelines ("U.S.S.G."):

  a. As to Count One (Narcotics Conspiracy), the applicable base offense level is 30 pursuant to United States Sentencing § 2D1.1(c)(5) to account for at least one kilogram (but less than 3 kilograms) of heroin, .222 grams of heroin and fentanyl and 34 grams of cocaine base.

4

b. As to Count Seven (False Claim to U.S. Citizenship), the base offense level is 8, U.S.S.G. § 2L2.2.

c. Counts One and Seven do not Group and the Multiple Count rules in Chapter Three of the U.S.S.G. apply. However, because the offense level for Count One is 9 or more levels more serious than Count Seven there is no further increase. U.S.S.G. § 3D1.

d. Provided the Defendant meets the criteria set forth in subdivisions (1)–(5) of subsection (a) of §5C1.2 (Limitation on Applicability of Statutory Minimum Sentences in Certain Cases), there is a decrease of 2 levels.

e. This Office does not oppose a **2**-level reduction in the Defendant's adjusted offense level pursuant to U.S.S.G. § 3E1.1(a), based upon the Defendant's apparent prompt recognition and affirmative acceptance of personal responsibility for the Defendant's criminal conduct. This Office may oppose any adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a) and may decline to make a motion pursuant to U.S.S.G. § 3E1.1(b), if the Defendant: (i) fails to admit each and every item in the factual stipulation; (ii) denies involvement in the offense; (iii) gives conflicting statements about the Defendant's involvement in the offense; (iv) is untruthful with the Court, this Office, or the United States Probation Office; (v) obstructs or attempts to obstruct justice prior to sentencing; (vi) engages in any criminal conduct between the date of this Agreement and the date of sentencing; (vii) attempts to withdraw the plea of guilty; or (viii) violates this Agreement in any way.

f. Accordingly, the adjusted offense level is 26.

g. The parties fully anticipate that, not later than the time of the sentencing hearing, the defendant will meet the requirements of the so-called "Safety Valve" pursuant to U.S.S.G 5C1.2(b), the court shall impose a sentence in accordance with the applicable guidelines without regard to any statutory minimum sentence.

8. Other than as set forth above, no other offense characteristics, sentencing guidelines factors, potential departures or adjustments set forth in the United States Sentencing Guidelines are in dispute or will be raised in calculating the advisory guidelines range.

Obligations of the Parties

9. At the time of sentencing, the Defendant reserves the party to advocate for any lawful sentence using the factors set forth pursuant to 18 U.S.C. § 3553. The Government agrees to cap its sentencing recommendation at no more than ~~6 years' incarceration~~ the low end of the Guidelines, by determined by the Court to be applicable. SW

10. This Office reserves the right to bring to the Court's attention all information with respect to the Defendant's background, character, and conduct that this Office deems relevant to sentencing, including the conduct that is the subject of any counts of the Superseding Indictment. At the time of sentencing, this Office will move to dismiss any open counts against the Defendant.

5

## Waiver of Appeal

11. In exchange for the concessions made by this Office and the Defendant in this Agreement, this Office and the Defendant waive their rights to appeal as follows:

    a. The Defendant knowingly waives all right, pursuant to 28 U.S.C. § 1291 or any other statute or constitutional provision, to appeal the Defendant's conviction on any ground whatsoever. This includes a waiver of all right to appeal the Defendant's conviction on the ground that the statutes to which the Defendant is pleading guilty is unconstitutional, or on the ground that the admitted conduct does not fall within the scope of the statutes, to the extent that such challenges legally can be waived.

    b. The Defendant and this Office knowingly and expressly waive all rights conferred by 18 U.S.C. § 3742 to appeal whatever sentence is imposed (including any term of imprisonment, fine, term of supervised release, or order of restitution) for any reason (including the establishment of the advisory sentencing guidelines range, the determination of the Defendant's criminal history, the weighing of the sentencing factors, and any constitutional challenges to the calculation and imposition of any term of imprisonment, fine, order of forfeiture, order of restitution, and term or condition of supervised release), except both parties reserve the right to appeal any unlawful sentence.

    c. The Defendant waives any and all rights under the Freedom of Information Act relating to the investigation and prosecution of the above-captioned matter and agrees not to file any request for documents from this Office or any investigating agency.

## Consent to Removal from the United States

12. The Defendant acknowledges that he is subject to removal from the United States and agrees not to contest any removal proceedings brought by the Department of Homeland Security (DHS). If the DHS files a Notice to Appear or other administrative document requiring the Defendant to show cause why he should not be removed, the Defendant agrees to request an expedited removal hearing and to consent to removal. The Defendant acknowledges that by consenting to removal, he will be removed from the United States expeditiously upon completion of his term of incarceration. The Defendant knowingly waives any and all rights to appeal, reopen, reconsider or otherwise challenge his removal.

13. The Defendant agrees to waive any rights he may have to apply for any form of relief or protection from removal, deportation or exclusion under the Immigration and Nationality Act (as amended) and related federal regulations. The rights the Defendant is waiving include, but are not limited to the ability to apply for voluntary departure, asylum, withholding of deportation or removal, cancellation of removal, suspension of deportation, adjustment of status and protection under the Convention Against Torture. As part of this agreement, the Defendant specifically acknowledges and states that he has not been persecuted or tortured in, and has no present fear of persecution or torture in the Dominican Republic on account of race, religion, nationality, political opinion or membership in a particular social or political group.

14. The Defendant agrees that upon entry of this plea agreement, the Defendant abandons any and all applications for relief from deportation, removal or exclusion he may have

filed and agreed not to file or prosecute any application for relief from removal, deportation or exclusion before any federal court, immigration court, Board of Immigration Appeals or DHS prior to the defendant's removal from the United States.

15. The Defendant agrees to assist the DHS in his removal. Specifically, the defendant agrees to assist the DHS in procuring travel or other documents necessary for the Defendant's removal; to cooperate with representatives of the country or countries to which the Defendant's removal is directed; and to execute promptly those documents which are needed to effect the Defendant's removal. The Defendant agrees that his failure or refusal to cooperate in his removal shall constitute a material breach of this agreement and may subject the Defendant to additional criminal penalties.

## Forfeiture

16. The Defendant understands that the Court may enter an Order of Forfeiture as part of the Defendant's sentence, and that the Order of Forfeiture may include assets directly traceable to the offenses, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offenses.

17. The Defendant waives all challenges to any forfeiture carried out in accordance with this Agreement on any grounds, including any and all constitutional, legal, equitable, statutory, or administrative grounds brought by any means, including through direct appeal, habeas corpus petition, or civil complaint. The Defendant will not challenge or seek review of any civil or administrative forfeiture of any property subject to forfeiture under this Agreement, and will not assist any third party with any challenge or review or any petition for remission of forfeiture.

## Defendant's Conduct Prior to Sentencing and Breach

18. Between now and the date of the sentencing, the Defendant will not engage in conduct that constitutes obstruction of justice under U.S.S.G. § 3C1.1; will not violate any federal, state, or local law; will acknowledge guilt to the probation officer and the Court; will be truthful in any statement to the Court, this Office, law enforcement agents, and probation officers; will cooperate in the preparation of the presentence report; and will not move to withdraw from the plea of guilty or from this Agreement.

19. If the Defendant engages in conduct prior to sentencing that violates the above paragraph of this Agreement, and the Court finds a violation by a preponderance of the evidence, then: (i) this Office will be free from its obligations under this Agreement; (ii) this Office may make sentencing arguments and recommendations different from those set out in this Agreement, even if the Agreement was reached pursuant to Rule 11(c)(1)(C); and (iii) in any criminal or civil proceeding, this Office will be free to use against the Defendant all statements made by the Defendant and any of the information or materials provided by the Defendant, including statements, information, and materials provided pursuant to this Agreement, and statements made during proceedings before the Court pursuant to Rule 11 of the Federal Rules of Criminal Procedure. A determination that this Office is released from its obligations under this Agreement will not permit the Defendant to withdraw the guilty plea. The Defendant acknowledges that the Defendant may not withdraw the Defendant's guilty plea—even if made pursuant to Rule 11(c)(1)(C)—if the Court finds that the Defendant breached the Agreement. In that event, neither

the Court nor the Government will be bound by the specific sentence or sentencing range agreed and stipulated to herein pursuant to Rule 11(c)(1)(C).

### Court Not a Party

20. The Court is not a party to this Agreement. The sentence to be imposed is within the sole discretion of the Court. The Court is not bound by the Sentencing Guidelines stipulation in this Agreement. The Court will determine the facts relevant to sentencing. The Court is not required to accept any recommendation or stipulation of the parties. The Court has the power to impose a sentence up to the maximum penalty allowed by law. If the Court makes sentencing findings different from those stipulated in this Agreement, or if the Court imposes any sentence up to the maximum allowed by statute, the Defendant will remain bound to fulfill all of the obligations under this Agreement. Neither the prosecutor, defense counsel, nor the Court can make a binding prediction, promise, or representation as to what guidelines range or sentence the Defendant will receive. The Defendant agrees that no one has made such a binding prediction or promise.

### Entire Agreement

21. This letter, together with the Sealed Supplement, constitutes the complete plea agreement in this case. This letter, together with the Sealed Supplement, supersedes any prior understandings, promises, or conditions between this Office and the Defendant. There are no other agreements, promises, undertakings, or understandings between the Defendant and this Office other than those set forth in this letter and the Sealed Supplement. No changes to this Agreement will be effective unless in writing, signed by all parties and approved by the Court.

If the Defendant fully accepts each and every term and condition of this Agreement, please sign and have the Defendant sign the original and return it to me promptly.

Very truly yours,

Robert K. Hur
United States Attorney

/s/
Sandra Wilkinson
Paul Riley
Assistant United States Attorneys

I have read this Agreement and/or have had the Agreement read to me translated into Spanish, including the Sealed Supplement, and carefully reviewed every part of it with my attorney. I understand it and I voluntarily agree to it. Specifically, I have reviewed the Factual and Advisory Guidelines Stipulation with my attorney and I do not wish to change any part of it. I am completely satisfied with the representation of my attorney.

7.30.19
Date

Ivanovich Constanzo mercedes
Ivanovich Constanzo Mercedes-Soriano
Defendant

I am the Defendant's attorney. I have carefully reviewed every part of this Agreement, including the Sealed Supplement with the Defendant. I translated or caused to be translated this agreement from English into Spanish to the defendant on 7/30, 2019. The Defendant advises me that the Defendant understands and accepts its terms. To my knowledge, the Defendant's decision to enter into this Agreement is an informed and voluntary one.

7.30.19
Date

Manuel J. Retureta, Esq.

## ATTACHMENT A - STIPULATION OF FACTS

*The undersigned parties stipulate and agree that if this case had proceeded to trial, this Office would have proven the following facts beyond a reasonable doubt. The undersigned parties also stipulate and agree that the following facts do not encompass all of the evidence that would have been presented had this matter proceeded to trial.*

Ivanovich Constanzo Mercedes-Soriano a/k/a "Misael Constanzo Mercedes," "German Pena Lopez" a/k/a Julian ("the Defendant") was born in the Dominican Republic and is illegally in the United States.

Beginning at a time unknown, but at least as early as June 2017 and continuing until September 26, 2018, the Defendant conspired with Elvin Solano-Pena and Herme Soriano (a/k/a Miguel Urraca-Gonzalez) and others to distribute cocaine (crack) and 1000 grams or more of heroin to drug users that lived primarily in Cecil County, Maryland.

On July 16, 2018, Maryland State Police (MSP) officers were at the Flying J truck stop in North East Maryland when they observed a known drug user (Witness 1) waiting for someone. A silver Nissan Altima arrived with Solano-Pena and Soriano inside. Witness 1 walked over and purchased drugs. MSP confronted Witness 1 who agreed to provide information and stated that she had bought drugs from the men before and set up transactions using a designated phone number herein referred to as the "dispatch" phone.

Witness 1 continued to place orders using the "dispatch phone" and working with MSP. On July 18, 2018, Witness 1 called the dispatch phone and spoke to Solano-Pena on the speakerphone with MSP listening in. Witness 1 placed an order for $30 of crack cocaine and 1 bag of heroin. Solano-Pena showed up at the meet place in the same silver Nissan Altima. There was a passenger in the car, unknown to MSP. The heroin weighed .8 grams and the crack weighed .5 grams.

On July 23, 2018, Witness 1 called the dispatch phone and spoke to a different man who told Witness 1 to meet him at a grocery store in Elkton. Mercedes-Soriano arrived in the black Honda Civic and sold her 1 gram of heroin and .4 grams of crack cocaine. Again, this was a controlled buy under the supervision of MSP.

On August 3, 2018, Witness 1 called the dispatch phone and spoke to Solano-Pena. After the call, Soriano arrived at the agreed meeting place and sold her .6 grams of heroin and .6 grams of crack cocaine. MSP stopped the vehicle; Soriano was driving, and MSP identified him as the man who sold Witness 1 the drugs. After searching the car, MSP recovered another .4 grams of heroin and $648 in cash as well as a crack pipe and burnt cocaine. Soriano provided a false name at the time. MSP used social media to attempt to identify him and found pictures of Soriano with Mercedes-Soriano. The two men were later identified as brothers.

Mercedes-Soriano and Soriano were also illegal aliens using fraudulently obtained driver's licenses in their respective alias names. On September 6, 2018, both subjects were taken into ICE custody following a traffic stop in a black Honda Civic (MD Plate "3DF5059", hereinafter "black

1

Honda Civic") and both men lied as to their identity, place of birth (citizenship), travel to the United States and the documents they produced. Both Mercedes-Soriano and Soriano were interviewed by ICE officers after being provided their rights in Spanish. Mercedes-Soriano falsely swore under oath that he was a citizen, born in Puerto Rico. Soriano also falsely swore under oath that he was a citizen, born in Puerto Rico as well. In fact, both men are citizens of the Dominican Republic.

A towing company retrieved the black Honda Civic and stored it in Cecil County. The car was registered in the name of Oscar Pilarte, a close friend of the Defendant, Solano-Pena, and Soriano. Pilarte would provide assistance to the drug dealers, among other things, by allowing them to use a car registered in his name, knowing the men were involved in drug trafficking. Pilarte claimed possession of the black Honda from police custody.

On September 25, 2018, the Defendant called Pilarte Rivera from jail. The call was in Spanish but in sum or substance the Defendant indicated he had tried to call Pilarte Rivera three times but that the Defendant had not answered the phone. The Defendant asked about "compadre", referring to their co-defendant Elvin Solano-Pena. Pilarte responded that he was just with compadre and the two would determine if they could get "that thing done this week." Pilarte Rivera indicated that the paperwork was all signed – referring to the false notarized document he had obtained two days earlier. The two men discussed clothes in the apartment and that "your girl" can pick up the "other stuff." If Pilarte Rivera was able to get a key to the apartment (apparently one was left inside), he agreed to give it to the Defendant's girl. The Defendant also instructed Pilarte Rivera about, in words to the effect (translated from Spanish), "that black thing that the guy keeps bugging me about. Get with compadre and give it to him to take to that guy. This guy keeps bugging and bugging me. All you got to do is take it over there and leave it there. You just ask compadre to tell you where it is and you guys take it." The two men also discussed the worth of "gold chains" that the Defendant could sell to pay the guy.

DHS ICE obtained a federal search warrant for 321 Stevens Circle, Apartment 2D, Aberdeen, Maryland and executed it on September 26, 2018. In addition to identity documents for The Defendant and other records, law enforcement recovered drugs packaged for distribution. After laboratory testing, it was determined the drugs seized included substances contained approximately 160 grams of a mixture or substance containing heroin, .222 grams of heroin and fentanyl and approximately 32 grams of crack cocaine. The packaging was submitted for DNA testing and tested positive for the Defendant's. The other three codefendants were excluded as being contributors of the DNA.

Just prior to executing the search warrant at the Defendant's address on September 26, 2018, investigators observed Pilarte driving the black Honda Civic in front of the leasing office. Investigators proceeded to the leasing office in an attempt to identify all occupants utilizing the vehicle and encountered Pilarte and Solano-Pena. A few days after the black Honda Civic was towed by police on September 6, 2018, Pilarte arrived to the barracks to prove ownership in order to retrieve the vehicle.

Investigators questioned both subjects about the vehicle and the reason for attempting to obtain entry to the Stevens Circle apartment. Both Pilarte and Solano-Pena claimed to have arrived

at the apartment to pick up some items for a friend whom they identified as German (The Defendant's alias). Pilarte provided a Maryland driver's license and told officers he had obtained a power of attorney from the Defendant in order to enter the 321 Stevens Circle apartment and gather some birth certificates for him that he needed. Pilarte identified himself as a naturalized US Citizen and a native of the Dominican Republic. The Defendant provided officers with a fraudulently obtained Pennsylvania driver's license in the name of Joseph Allen Fields. In fact, both Solano-Pena and Pilarte knew there were drugs in the apartment and were there to help The Defendant.

During the encounter, Pilarte gave MSP consent to search the black Honda Civic after a canine alerted on the vehicle for the presence of drugs. MSP officers recovered two cell phones from the car that were seized as evidence and subsequently searched pursuant to a state warrant. One of the telephones had the same number used in the three controlled buys described (the so-called "dispatch phone." The "dispatch phone" was located on the driver's seat.

The Defendant and Soriano were held in ICE custody at the Howard County Detention Center. Other jail calls from the Defendant to his girlfriend and others included coded references to the drugs found seized during the warrant execution at the 321 Stevens Circle apartment on September 26 and requested that someone retrieve the drugs (referred to sometimes as "trash" or "chicken.").

At least two witnesses testified in grand jury about purchasing heroin from the Defendant. The approximate quantity based on that testimony is more than 1 kilogram of heroin but less than 3 kilograms of heroin. The dispatch phone records reflected the frequency of calls with the drug customers and corroborated their individual testimony about drug sales.

SO STIPULATED:

_____
Ivanovich Constanzo Mercedes-Soriano
Defendant

_____
Manuel J Retureta Esq.
Counsel for Defendant